1
2
3
4              UNITED STATES DISTRICT COURT
5                  DISTRICT OF NEVADA
6                         * * *
7   STEPHEN R.F. KERN, JR.,              Case No. 2:13-cv-02227-RFB-NJK
8              Plaintiff,                           ORDER
9        v.                              Plaintiff's Motion for Summary Judgment
                                                   (ECF No. 37)
10  STROUD, et al.,                      Defendants' Motion for Summary Judgment
                                                   (ECF No. 54)
11             Defendants.
12

13      I.      INTRODUCTION

14          This case is brought by Plaintiff Stephen Kern under 42 U.S.C. § 1983, alleging three

15  claims under the Eighth Amendment. Plaintiff's claims arise from various events that took place

16  while he was incarcerated in High Desert State Prison (HDSP) from 2013-2014. Before the Court

17  are two motions for summary judgment. ECF Nos. 37, 54. For the reasons stated below, Plaintiff's

18
19  Motion (ECF No. 37) is DENIED, and Defendants' Motion (ECF No. 54) is GRANTED in part

20  and DENIED in part.

21
22      II.     BACKGROUND
23
24          A.  Causes of Action

25          Plaintiff alleges three cause of action in his Second Amended Complaint.  First, he alleges

26  an 8th Amendment claim for cruel and unusual punishment against Defendant Henry for an incident

27  in which Henry is alleged to have used excessive force against the Plaintiff by placing handcuffs

28

on the Plaintiff in a manner that resulted in significant pain and possible loss of consciousness. This first claim is only brought against Officer Henry. Second, Plaintiff alleges an 8th Amendment claim for deliberate indifference to a medical need, claiming that prison officials including medical staff ignored and then delayed treating a substantial wrist injury resulting from Henry's use of handcuffs. This second claim is brought against Dr. Chang and Assistant Warden Wickham. Third, Plaintiff alleges an 8th Amendment claim regarding conditions of confinement, claiming that prison officials prevented him from receiving regular or weekly outdoor exercise for the ten months that he was in segregated housing in 2013 and 2014. This third claim is brought against Warden Neven and Associate Warden Howell.[1]

### B. Procedural History

Plaintiff filed his application to proceed in forma pauperis on December 5, 2013. ECF No. 1. This was granted on February 20, 2014. ECF No. 23. His Complaint was entered on April 28, 2014. ECF No. 3. Plaintiff filed an Amended Complaint on June 17, 2014. ECF No. 7. Plaintiff filed a Second Amended Complaint on November 10, 2014. ECF No. 13.

Plaintiff voluntarily dismissed Defendant Stroud on May 15, 2014, which the Court granted on November 14, 2014. ECF Nos. 6 and 14. Plaintiff's Second Amended Complaint was screened and allowed to proceed on November 14, 2014. ECF No. 14.

Plaintiff filed a Motion for Summary Judgment on July 30, 2015. ECF No. 37. Defendants filed their Motion for Summary Judgment on October 21, 2015. ECF No. 54.

The Court held a hearing on the motions on March 9, 2016.

---

[1] Plaintiff's Second Amended Complaint mentions Assistant Warden Wickham in the headings section for Count III, but it is clear from the sworn statements that allegations for Count III are addressed to Wickham, and not those for Count III. Plaintiff offers no specific details of Wickham's involvement in Count III. Caseworker Kuloloia was also dropped as a named defendant in the Seconded Amended Complaint as to Count III.

## III.   LEGAL STANDARD

Summary judgment is appropriate when the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show "that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); accord Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986). When considering the propriety of summary judgment, the court views all facts and draws all inferences in the light most favorable to the nonmoving party. Johnson v. Poway Unified Sch. Dist., 658 F.3d 954, 960 (9th Cir. 2011). If the movant has carried its burden, the non-moving party "must do more than simply show that there is some metaphysical doubt as to the material facts . . . . Where the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no genuine issue for trial." Scott v. Harris, 550 U.S. 372, 380 (2007) (alteration in original) (internal quotation marks omitted).

## IV.   UNDISPUTED/DISPUTED FACTS

The Court incorporates its findings of undisputed and disputed facts as laid out at the hearing on March 9, 2016. ECF No. 81. The Court provides a brief summary below.[2]

### A.  Undisputed facts

On March 7, 2013, CO Henry observed that Plaintiff and his cell mate were not getting along. Henry entered the cell and placed the Plaintiff in wrist restraints and placed the Plaintiff in the unit's shower cage. Henry double locked the restraints to prevent the restraints from adjusting tighter or looser. Approximately twenty minutes after being placed in the shower, Plaintiff stated

---

[2] To the extent that the Court's written order conflicts with the findings or holdings from the hearing, this written order controls.

his wrist restraints were too tight and that his left side was numb. Henry looked at Plaintiff's restraints but did not see any squeezing of Plaintiff's wrist. A "man down" was called by Henry. Medical staff arrived and examined Plaintiff and took Plaintiff to the infirmary for further examination. The examination determined there were no bruises, lacerations, or hematomas, and Plaintiff was prescribed Ibuprofen for pain.

From March 7, 2013 until August 30, 2014, Plaintiff submitted multiple kites and grievances regarding his medical and mental health treatment and was seen on multiple occasions by doctors and nurses, typically within a week of his submission of a medical kite requesting to see a doctor. Plaintiff had two x-rays taken in April 2013.  On May 9, 2014, Plaintiff was seen by the nurse for a sick call and stated he has no problems at this time and does not need an appointment.

Plaintiff was placed in administrative segregation from March 13, 2013 until about October 11, 2013.  During his time in administrative segregation, Plaintiff was not permitted to exercise outside in the yard every day.  On July 16, 2013, Plaintiff filed a grievance regarding his conditions of confinement and complained he was not getting enough exercise and enough time for showering or bathing.   Plaintiff submitted further grievances regarding these same concerns as to his conditions of confinement while in segregation in July and August.  Prison officials responded and advised Plaintiff his request was reviewed, and that their records indicated he was let out for recreation on several days. They denied the grievance.  They did not address Plaintiff's concerns regarding not being able to bath or shower regularly.  Plaintiff was sent back to segregated housing from May 29, 2014 to August 29, 2014.

Plaintiff also asserts, as he did in his grievances, that he did not have regular bathing or showering opportunities during his ten months (seven months on first stint and three months on

- 4 -

second stint) in administrative segregation.  He was only let out of his cell about once a week for ten minutes to shower or bathe.  He also claimed that he had no functioning toilet while in segregation.  When he was let out of segregation for the one hour irregularly, he was generally not provided drinkable water in the summer months with temperatures over 100 degrees Fahrenheit. Defendants do not dispute these latter allegations.

### B.  Disputed Facts

Defendants argue that Plaintiff did not properly exhaust any of his claims by failing to pursue first or second level grievances after his initial informal grievance was denied. Plaintiff argues that he did properly exhaust and filed first and second level grievances for all his claims, that Defendant refuses to provide these grievances in discovery, and that he is unable to provide these records because he lost a legal box when he was transferred to another facility.

The parties also dispute how frequently Plaintiff was permitted to exercise.  Plaintiff alleges that he was permitted out of his cell one to two times a week but not always for exercise. He further alleges that there was no penological reason for his exercise to be so restricted and that this level of restriction continued even after prison officials, including the Warden Neven and Assistant Warden Wickham, were made aware of the restrictions.  He claims that he was on a "24 hour lockdown" for most of the seven months that he was in segregation.  The Defendants dispute that he was so restricted for this entire time but they do not assert the amount of time that they believe that he was actually restricted.  They assert that they believe that he received exercise time at least 5 hours a week and on several different days per week.

### V.      ANALYSIS

### A.  Count III - Conditions of Confinement

#### 1.  Legal Standard

- 5 -

The Eighth Amendment's prohibition against cruel and unusual punishment protects prisoners not only from inhumane methods of punishment but also from inhumane conditions of confinement. Morgan v. Morgensen, 465 F.3d 1041, 1045 (9th Cir. 2006), opinion amended on reh'g, No. 04-35608, 2006 WL 3437344 (9th Cir. Nov. 30, 2006). "A prisoner claiming an Eighth Amendment violation [for conditions of confinement] must show (1) that the deprivation he suffered was objectively, sufficiently serious; and (2) that prison officials were deliberately indifferent to his safety in allowing the deprivation to take place." Id. (internal quotation marks omitted). "Although the routine discomfort inherent in the prison setting is inadequate to satisfy the objective prong of an Eighth Amendment inquiry, those deprivations denying the minimal civilized measure of life's necessities are sufficiently grave to form the basis of an Eighth Amendment violation." Johnson v. Lewis, 217 F.3d 726, 731 (9th Cir. 2000).

"Prison officials have a duty to ensure that prisoners are provided adequate shelter, food, clothing, sanitation, medical care, and personal safety," and the "circumstances, nature, and duration of a deprivation of these necessities must be considered in determining whether a constitutional violation has occurred." Id. "There is substantial agreement among the cases in this area that some form of regular outdoor exercise is extremely important to the psychological and physical well-being of the inmates." Spain v. Procunier, 600 F.2d 189, 199 (9th Cir. 1979). In Spain, the Ninth Circuit upheld the district court's finding that, in that case, the prison's denial of exercise five days a week for one hour a day constituted an eighth amendment violation. Id. Post-Spain, the Ninth Circuit has continued to hold that "[d]eprivation of outdoor exercise violates the Eighth Amendment rights of inmates confined to continuous and long-term segregation." Keenan v. Hall, 83 F.3d 1083, 1089 (9th Cir. 1996) opinion amended on denial of reh'g, 135 F.3d 1318 (9th Cir. 1998).

### 2.  Exhaustion of Administrative Remedies

#### a.  Legal Standard

First, Defendants contend that Plaintiff did not exhaust all administrative remedies for Count I. The Prison Litigation Reform Act (PLRA) requires that before bringing a Section 1983 action, a prisoner must exhaust all available administrative remedies. 42 U.S.C. § 1997e(a). Exhaustion must be proper, meaning that the plaintiff must proceed through each step of the prison's grievance procedure. Griffin v. Arpaio, 557 F.3d 1117, 1120 (9th Cir. 2009) (citing Woodford v. Ngo, 548 U.S. 81, 93 (2006)). The level of detail needed in a grievance to properly exhaust a claim under the PLRA depends on the applicable grievance procedures of each individual prison. Jones v. Bock, 549 U.S. 199, 218 (2007).

NDOC Administrative Regulation (AR) 740 sets forth the grievance procedure applicable to Nevada inmates. There are three levels of grievances within AR 740: an Informal grievance (AR 740.05), a First-Level grievance (AR 740.06), and a Second-Level grievance (AR 740.07). Id. at 4-7. Inmates who are dissatisfied with a decision at a lower level may appeal the decision by filing a higher-level grievance. Once a decision on the merits has been rendered on a Second-Level grievance, the NDOC administrative grievance process is considered exhausted. AR 740 also provides the time frame in which a grievance must be filed and provides that an informal grievance must be filed within six (6) months for issues involving personal injury, medical claims, or any other tort claims including civil rights claims.

In the absence of a prison policy or procedure specifying a particular level of detail at which grievances must be stated, a grievance is sufficient for exhaustion purposes "if it alerts the prison to the nature of the wrong for which redress is sought." Griffin, 557 F.3d at 1120. This is because "[t]he primary purpose of a grievance is to alert the prison to a problem and facilitate its resolution,

not to lay groundwork for litigation." Id.; see also Jones, 549 U.S. at 204 ("Requiring exhaustion allows prison officials an opportunity to resolve disputes concerning the exercise of their responsibilities before being haled into court.").

Where an exhaustion defense is raised in a motion for summary judgment, disputed questions of fact should be resolved by the judge rather than the jury. Albino, 747 F.3d at 1170-71. "If the district judge holds that the prisoner has exhausted available administrative remedies, that administrative remedies are not available, or that a prisoner's failure to exhaust available remedies should be excused, the case may proceed to the merits." Id. at 1171. "[T]he defendant in a PLRA case must plead and prove nonexhaustion as an affirmative defense." Albino, 747 F.3d at 1171.

### b.  Analysis

On July 7, 2013, Plaintiff submitted an Informal grievance regarding his conditions of confinement claim. In his grievance, Plaintiff stated that he was not receiving the appropriate amount of exercise time and bathing per week and felt that it was a violation of his constitutional rights. Beginning a month later, and prior to receiving a response to his informal grievance, Plaintiff submitted additional informal grievances on the same issues on August 15, 2013, August 16, 2013, and August 19, 2013. Defendant denied these grievances as duplicative, since Plaintiff had not received a response to his first grievance, and Defendant does not recognize these later grievances to qualify as first, or second level grievances. More than two months after Plaintiff filed his informal grievance, on September 4, 2013, prison officials denied the Informal Grievance.

Defendants argue that the Plaintiff did not appeal the Informal grievance decision, never filing a First-Level grievance, and therefore he failed to exhaust his claim as to Count I.

In response, Plaintiff argues that he did file a first, second, and third level grievance but the

Defendants have failed to provide evidence of such. Opp'n at 17. Plaintiff states that, because he lost his legal box during a transfer, he does not have the documents to prove this. Id. In reply, Defendants argue that there is no factual support that corroborates either of Plaintiff's allegations. Associate Warden Nash monitors all inmate grievances for accuracy and confirms that inmate grievances are kept in the ordinary course of business. Associate Warden Nash further declared that the grievance records provided to this Court are true and correct copies.

The Court finds that Plaintiff sufficiently exhausted his administrative remedies or can be excused from fully exhausting them.  The PLRA's exhaustion requirement applies only to "available" remedies, meaning those that are, as a practical matter, "capable of use" by the inmate. Albino, 747 F.3d at 1171. Under the PLRA, the defendant has the burden to show that there was an available administrative remedy that the plaintiff did not exhaust. Id. at 1172. Once that is done, the plaintiff has the burden of demonstrating that the generally available administrative remedies were, in his particular case, "effectively unavailable to him." Id. The plaintiff may do so by "showing that the local remedies were ineffective, unobtainable, unduly prolonged, inadequate, or obviously futile." Id. (quoting Hilao v. Estate of Marcos, 103 F.3d 767, 778 n.5 (9th Cir. 1996)); See Williams v. Paramo, 775 F.3d 1182, 1191 (9th Cir. 2015). Defendants have the ultimate burden of proof, however. Id.  The Ninth Circuit held "that where prison officials declined to reach the merits of a particular grievance for reasons inconsistent with or unsupported by applicable regulations, administrative remedies were effectively unavailable." Albino, 747 F.3d at 1173 (citing Sapp v. Kimbrell, 623 F.3d 813 (9th Cir.2010)).

In this case, Defendants met their initial burden by showing that the NDOC has established procedures for filing grievances and that Plaintiff did not technically exhaust the grievance process as to his conditions of confinement claim in Count III. The Court finds that Plaintiff also met his

burden of production by showing that administrative remedies were effectively unavailable to him to seek relief. The parties agree that Plaintiff filed an informal grievance. Having heard no response for over a month, he subsequently filed three additional grievances where his conditions of confinement remained the same for another month before his grievance was denied.  This pattern shows a protracted process where Plaintiff would be justified in believing that his efforts to file further grievances would be futile. Plaintiff did what he could from his segregated unit to alert prison officials to his concerns, but, the pattern and response demonstrates that administrative remedies were effectively unavailable. See Albino, 747 F.3d at 1173.

Even if administrative remedies had been available as to Count III, the Court finds that Plaintiff successfully exhausted those remedies. The Ninth Circuit has held that a grievance is sufficient as long as it "alerts the prison to the nature of the wrong for which redress is sought." Griffin, 557 F.3d at 1120. This standard comports with the purposes of the PLRA's exhaustion requirement: to give the prison the opportunity to address complaints internally and take corrective action, to deter frivolous cases, and to develop an administrative record that clarifies the dispute for the court. Brown, 422 F.3d at 936.

In this instance, the Court finds that Plaintiff exhausted his administrative remedies as to Count III because the other grievances he submitted regarding his conditions of confinement were sufficient to "alert the prison to the nature of the wrong for which redress is sought." Griffin, 557 F.3d at 1120. The Court also finds that requiring Plaintiff to file further grievances regarding his conditions of confinement claim would not serve the purposes of exhaustion. The numerous grievances filed on the same issue provided Defendants with ample time and opportunity to take corrective action. Prison officials were clearly alerted to Plaintiff's concerns from his several

identical grievances.  These reasons provide an alternative basis for denying summary judgment as to Count III for failure to exhaust.

Finally, the Court finds that even if Plaintiff did not technically exhaust in the manner set forth under NDOC Guidelines he can be excused from doing so.  He was seeking to file grievances while under allegedly restrictive and psychologically harmful confinement conditions for many months.  He filed several grievances outlining his concerns.  He can be excused from having to file further grievances under these conditions after he received the delayed denial.

Proving non-exhaustion is the defendant's burden, and the Court finds Defendants have failed to meet that burden as to Count III. Therefore, summary judgment is denied on the issue of exhaustion as to Count III.  Having denied Defendant's affirmative defense of failure to exhaust as to Plaintiff's Count III, the Court addresses the issue on the merits.

### 3.   Recreational Time And Insufficient Sanitation

Defendants argue that Plaintiff is not entitled to summary judgment since the evidence shows he received some recreational time. For example, the response to Plaintiff's informal grievance indicates he received recreational time. Defendants further argue that declarations from other inmates do not address whether Plaintiff was denied recreational time and do not rebut the fact that he did receive outdoor recreational time.  Defendants do not respond to Plaintiff's claims about not being permitted to shower regularly and not having a functioning toilet.

The Court finds, based upon undisputed facts and the disputed facts, that Plaintiff has produced sufficient evidence to proceed to trial on his conditions of confinement claim concerning outdoor exercise and sanitation/hygiene, and that a reasonable jury could find that under the specific circumstances of his case, requiring a prisoner to remain alone, long-term, in a small cell in administrative segregation for 23-24 hours a day, 5-6 days a week, may constitute cruel and

unusual punishment under the Eighth Amendment. See Spain, 600 F.2d at 199; See also Keenan v. Hall, 83 F.3d 1083, 1089-91 (9th Cir. 1996), opinion amended on denial of reh'g, 135 F.3d 1318 (9th Cir. 1998)(noting possible violations related exercise and hygiene); Allen v. Sakai, 48 F.3d 1082, 1087 (9th Cir. 1994)(noting possible violation for allowing exercise of only 45 minutes per week for six weeks).  In this case, it is undisputed that Plaintiff was in segregated housing for seven consecutive months, that he was not let out of his cell on a regular or daily basis for exercise, that Defendants never articulated a reason for this restrictive schedule, that he was not permitted to bath or shower more than weekly, that he had no regular functioning toilet, and that those few times when he was let out of his cell he had no potable water.  It is disputed whether Plaintiff spent most if not almost all of his days during the seven months in his cell on "24 hour lockdown" with no running water and no functioning toilet.  The Court finds that, if Plaintiff spent seven consecutive months in segregation in his cell for 24 hours a day with a nonfunctioning toilet, with an exception for leaving for showering once a week and recreation once every five to 10 days (or less) and without an articulated penological reason, this could rise to the level of an 8th Amendment violation if prison officials were aware of such conditions of confinement.  Id.

### 4.  Causal Link Between Injury and Defendants' Conduct

#### a.  Legal Standard

Plaintiff alleges that Warden Neven and Associate Warden Howell were aware of the restrictive and potentially unconstitutional nature of his confinement in 2013.  Generally, under 42 U.S.C. § 1983, "[l]iability arises . . . only upon a showing of personal participation by the defendant." Taylor v. List, 880 F.2d 1040, 1045 (9th Cir. 1989) (citation omitted). "Although there is no pure *respondeat superior* liability under section 1983, a supervisor is liable for the acts of his subordinates if the supervisor participated in or directed the violation, or knew of the violations of

subordinates and failed to correct them." Preschooler II v. Clark County School Bd. of Trustees, 479 F.3d 1175, 1182 (9th Cir. 2007) (citations and internal quotation marks omitted).

"A defendant may be held liable as a supervisor under § 1983 if there exists either (1) his or her personal involvement in the constitutional deprivation, or (2) a sufficient causal connection between the supervisor's wrongful conduct and the constitutional violation." Starr v. Baca, 652 F.3d 1202, 1207 (9th Cir. 2011). This causal connection can be established by "setting in motion a series of acts by others, or by knowingly refus[ing] to terminate a series of acts by others, which [the supervisor] knew or reasonably should have known would cause others to inflict a constitutional injury." Id. (alterations in original) (citations and internal quotation marks omitted).

A supervisor, therefore, "can be liable in his individual capacity for his own culpable action or inaction in the training, supervision, or control of his subordinates; for his acquiescence in the constitutional deprivation; or for conduct that showed a reckless or callous indifference to the rights of others." Id. (internal quotation marks omitted); see also Iqbal, 556 U.S. at 676 ("Because vicarious liability is inapplicable to . . . § 1983 suits, a plaintiff must plead that each Government-official defendant, through the official's own individual actions, has violated the Constitution.").

### b. Discussion

In this case, Defendants argue that Plaintiff has not proffered sufficiently detailed evidence of direct participation in any alleged violation to permit the claim against Warden Neven and Assistant Warden Howell to proceed. The Court disagrees.

The Court finds that the claim may proceed against Warden Neven and Assistant Warden Howell under a theory of supervisory liability for two reasons. First, the Court finds that the position of final responder is a supervisory role from which the Court can infer Defendants "knew of the violations of subordinates and failed to correct them." Preschooler II v. Clark County School

<u>Bd. of Trustees</u>, 479 F.3d 1175, 1182 (9th Cir. 2007).  In this case, Plaintiff has asserted through sworn testimony that Defendants Neven and Howell had direct knowledge through grievances of Plaintiff's alleged unconstitutional conditions of confinement and did nothing about it despite having the authority to address his concerns.  He states that they had "subjective" knowledge of his conditions of confinement through grievances during the period he was so confined.  They allegedly received the grievances and were the final responders to them.  After having been so informed, they allegedly did nothing while Plaintiff continued to experience these conditions of confinement for several weeks and months after they had been informed.  Such an allegation supports an argument that the Defendants demonstrated a reckless indifference to the violation of Plaintiff's rights.

Second, and relatedly, Plaintiff's testimony that Neven and Howell were aware of his alleged unconstitutional conditions of confinement and did nothing about it, supports possible supervisory liability because of their alleged acquiescence or promulgation of this allegedly unconstitutional policy related to conditions of confinement that caused harm to inmates in segregated housing including Plaintiff.  <u>See Starr v. Baca</u>, 652 F.3d 1202, 1208 (9th Cir. 2011).  For these two reasons, Plaintiff's claim against Warden Neven and Associate Warden Howell may proceed.

### 5.  Qualified immunity

#### a.  Legal Standard

Last, Defendants Neven and Howell argue that they are entitled to qualified immunity.  "The doctrine of qualified immunity protects government officials from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." <u>Pearson v. Callahan</u>, 555 U.S. 223, 231 (2009).

Qualified immunity is an immunity from suit rather than a defense to liability, and "ensures that officers are on notice their conduct is unlawful before being subjected to suit." Tarabochia v. Adkins, 766 F.3d 1115, 1121 (9th Cir. 2014).

In deciding whether officers are entitled to qualified immunity, courts consider, taking the facts in the light most favorable to the nonmoving party, whether (1) the facts show that the officer's conduct violated a constitutional right, and (2) if so, whether that right was clearly established at the time. Id.

Under the second prong, courts "consider whether a reasonable officer would have had fair notice that the action was unlawful." Id. at 1125 (internal quotation marks omitted). While a case directly on point is not required in order for a right to be clearly established, "existing precedent must have placed the statutory or constitutional question beyond debate." Ashcroft v. al-Kidd, 131 S.Ct. 2074, 2083 (2011). This ensures that the law has given officials "fair warning that their conduct is unconstitutional." Ellins, 710 F.3d at 1064. Further, the right must be defined at "the appropriate level of generality . . . [the court] must not allow an overly generalized or excessively specific construction of the right to guide [its] analysis." Cunningham v. Gates, 229 F.3d 1271, 1288 (9th Cir. 2000); see also al-Kidd, 131 S.Ct. at 2084. The plaintiff bears the burden of proving that the right was clearly established. Id. at 1125.

In deciding a claim of qualified immunity where a genuine dispute of material fact exists, the court accepts the version asserted by the non-moving party. See Bryan v. MacPherson, 630 F.3d 805, 823 (9th Cir. 2010). Summary judgment must be denied where a genuine issue of material fact exists that prevents a finding of qualified immunity. Sandoval v. Las Vegas Metropolitan Police Dept., 756 F.3d 1154, 1160 (9th Cir. 2014).

**b.  Discussion**

Defendant argues that Defendants Warden Neven and Howell are entitled to qualified immunity because they did not have enough information regarding Plaintiff's conditions of confinement to understand that his rights were being violated. The Court rejects this claim as factually contrary to the undisputed and disputed evidence in this case. The Court finds that these defendants are not entitled to qualified immunity.

The Court finds that there are genuine issues of material fact as it relates to what Warden Neven and Associate Warden Howell knew about Plaintiff's conditions of confinement and when they knew it. While the Defendants have asserted that they were not aware of any unconstitutional conditions of confinement, the Court first reiterates that Plaintiff has proffered sufficient competent evidence of the existence of unconstitutional conditions of confinement. Plaintiff has alleged that for seven consecutive months he did not receive exercise time every week, that he did not have a functioning toilet, and that he did not have the ability to shower except maybe once a week.

Moreover, the Court finds that such a constitutional violation would have been clearly established under Ninth Circuit precedent. See Allen v. Sakai, 48 F.3d 1082, 1087 (9th Cir. 1994) (noting the allowing exercise once a week for a six week period was sufficient to create Eight Amendment violation and denying qualified immunity to prison officials)

Further, he has provided sworn testimony that Warden Neven became aware of his allegedly unconstitutional conditions by at least August 15, 2013 and Associate Warden Howell actually responded to his grievances about the conditions on July 27 and August 4, 2013. Plaintiff's initial stint of confinement did not end until October 11, 2013. These asserted facts

created the possibility that Neven and Howell might have known about unconstitutional conditions of confinement and acquiesced in their continuation for several more months in 2013.[3]

Based on these facts, the Court finds that depriving an inmate in long-term segregation daily outdoor exercise may constitute an Eighth Amendment violation and that this right was clearly established in 2013 and 2014. The Court further finds that there are genuine issues of disputed fact as to whether Neven and Howell were aware of all of the alleged conditions of Plaintiff's confinement while in segregation and whether they acquiesced in the continuation of these conditions. Therefore, the Court DENIES Defendants Neven and Howell qualified immunity.

In light of the Court's findings, the Court therefore DENIES both parties' motions for summary judgment as to Count III, the conditions of confinement claim. This claim shall proceed to trial.

### B. Count I - Excessive Force

#### 1. Legal Standard

The Eighth Amendment forbids cruel and unusual punishment. In an excessive force case, prison officials violate the Eighth Amendment if they cause "the unnecessary and wanton infliction of pain." Hudson v. McMillian, 503 U.S. 1, 5 (1992) (citations and quotation marks omitted); see also Furnace v. Sullivan, 705 F.3d 1021, 1027 (9th Cir. 2013). The "core judicial inquiry" is "whether force was applied in a good-faith effort to maintain or restore discipline, or maliciously and sadistically to cause harm." Hudson, 503 U.S. at 6. Courts consider five factors in making this determination: (1) the extent of the injury suffered by the inmate; (2) the need for the use of force;

---

[3] The Court in its analysis in this order focuses on the first seven month stint and not the subsequent three month stint in segregation. Plaintiff's facts as it relates to the Defendants focus on this initial period. The second shorter period of segregation has insufficient detail for the Court to evaluate possible constitutional violations.

(3) the relationship between the need and the level of force used; (4) the threat reasonably perceived by the responsible officials; and (5) any efforts made to mitigate the severity of the force used. Furnace, 705 F.3d at 1028-29 (citation and quotation marks omitted).

### 2. Analysis

Defendants first argue that Plaintiff failed to exhaust his administrative remedies with regards to Count I. The Court does not reach this issue, however, because it finds that, even if Plaintiff had properly exhausted, Defendant Henry is entitled to summary judgment concerning Plaintiff's excessive use of force claim and would be entitled to qualified immunity.

The undisputed facts establish that on March 7, 2013, Plaintiff and his cellmate were not getting along. While Plaintiff argues he was not being combative or aggressive towards the CO, Plaintiff does not dispute that he was involved in a dispute with his cellmate. Defendants argue that, to maintain and restore discipline and prevent a potential fight from breaking out, Henry put Plaintiff in wrist restraints and placed him in the shower to separate him from his cellmate. Henry double-locked the restraints to prevent Plaintiff from evading the restraints. Upon Plaintiff's complaint that the restraints were too tight, Henry looked at the restraints but did not see any squeezing of Plaintiff's wrists; Henry did not adjust the restraints. While the parties dispute whether Plaintiff lost consciousness, there is no evidence that Plaintiff suffered wrist or other injuries, including loss of consciousness, as a result of the tight handcuffs. Plaintiff's medical records from the examination that day found "no bruises, lacerations, or hematomas." ECF No. 54, Ex. C. Nor do the medical records reference Plaintiff's loss of consciousness. Id.

Additionally, Henry call for medical staff to address Plaintiff's injury complaints. Plaintiff was taken to the infirmary to address his alleged injuries.  Henry did not simply put him back in the cell and ignore him for hours.

Further, as of 2015, Plaintiff affirmatively stated he was no longer experiencing wrist pain. On May 9, 2014, Plaintiff was seen by the nurse for a sick call and stated he has no problems at this time and does not need an appointment. On August 30, 2014 Plaintiff was seen by nursing upon his arrival at Ely State Prison, with findings for no need for continuing care.  The only chronic pain noted was knee pain.

Therefore, the Court finds that Defendant Henry did not exert excessive force on Plaintiff by handcuffing him on March 7, 2013. Applying the "core judicial inquiry" to the facts at hand, the Court finds that the "force was applied in a good-faith effort to maintain or restore discipline" by preventing a potential fight from occurring between Plaintiff and his cell mate, and not "maliciously and sadistically to cause harm." Hudson, 503 U.S. at 6. Further, the fact that Henry and medical staff later took Plaintiff to the infirmary to treat his wrist and alleged loss of consciousness contradicts any argument that the handcuffing was done for a malicious purpose.

Moreover, the Court finds that even if Henry's conduct could constitute a constitutional violation.  He would be entitled to qualified immunity.  Even if he had placed the handcuffs on tightly and potentially painfully, there is no clearly established law of which he would be aware that would identify his conduct to be unconstitutional in light of the fact that he was placing the handcuffs on for a legitimate penological security reason and he took the Plaintiff to the infirmary after being told of the Plaintiff's discomfort.

The Court therefore GRANTS Defendant's motion as to Count I.

### C.  Count II - Delay and Denial of Medical Treatment

#### 1.  Legal Standard

To establish an Eighth Amendment claim against prison officials for medical treatment, an

incarcerated plaintiff must show deliberate indifference to his serious medical needs. Peralta v. Dillard, 744 F.3d 1076, 1081 (9th Cir. 2014) (citing Estelle v. Gamble, 429 U.S. 97, 104 (1976)).

The Ninth Circuit has established a two-part test for deliberate indifference. First, the plaintiff must establish a serious medical need, meaning that failure to treat the condition could result in "significant injury or the unnecessary and wanton infliction of pain." Id. (quoting Jett v. Penner, 439 F.3d 1091, 1096 (9th Cir. 2006) (internal quotation omitted)). Second, the plaintiff must demonstrate the defendant's deliberate indifference to the need, meaning that the prison official "knows of and disregards an excessive risk to inmate health." Id. (quoting Farmer v. Brennan, 511 U.S. 825, 837 (1994)).

The defendant's indifference to or interference with the plaintiff's medical care must be intentional; negligence will not suffice to state a deliberate indifference claim. Jett, 439 F.3d at 1096. Further, the plaintiff must show that harm resulted from the defendant's indifference, although the harm need not necessarily be substantial. Id.

### 2.  Analysis

Defendants first argue that Plaintiff's third Count fails because he did not adequately exhaust his administrative remedies. Even if Plaintiff exhausted his remedies as to his deliberate indifference claim, however, the Court finds that the Defendants are entitled to summary judgment and qualified immunity on this claim. Therefore, the Court does not reach the question of whether Plaintiff adequately exhausted.

Plaintiff cannot establish the existence of a "serious medical need." While he may have, at best, suffered some minor injury to his wrist. No objective evidence suggests that the injury was anything more than a slight injury if at all. Plaintiff's medical records show that there was no redness, swelling, lacerations, or hematomas on Plaintiff's wrist, and Plaintiff had full range of

motion and strength which is evidence that Plaintiff did not have a serious medical need.  X-rays of the wrist did not show any acute trauma or damage to his wrist.  The Court thus agrees that Plaintiff has failed to demonstrate that his alleged injury to his wrist constituted a serious medical need leading to a constitutional violation.

Additionally, to the extent the alleged injury could be considered a serious injury, HDSP staff, particularly Dr. Chang and Assistant Warden Wickham, responded to the Plaintiff's medical needs continuously, and were not deliberately indifferent to his medical needs. The medical records show that Plaintiff was seen immediately after the handcuffing incident, and subsequently, within days of kiting about medical issues. For example, Plaintiff submitted a medical kite dated April 3, 2013 and was seen a week later on April 11, 2013. After submitting a medical kite dated April 23, 2013, he was seen three days later on April 26, 2013, when an x-ray was performed, and again on May 16, 2013, by the doctor. These records, along with others, indicate that neither Chang nor Wickham purposefully acted or failed to respond to Plaintiff's medical needs. Chang saw the Plaintiff approximately four times following the incident. In addition, Wickham responded to grievances in accordance with NDOC policies. The Court finds that Plaintiff was treated immediately after the handcuff incident, on March 7, 2013, as well as several other times subsequently.  Plaintiff therefore cannot establish that the Defendants were deliberately indifferent to any serious medical need.

Even if the delays in treatment could constitute a constitutional violation, which they do not here, the Court would still find that the Defendants would be entitled to qualified immunity on this claim.  There is no clearly established law that would have put the Defendants on notice that the relatively minor delays in responding to Plaintiff's medical requests would represent a constitutional violation.

The Court GRANTS Defendants' motion with respect to Count II.

## VI.    CONCLUSION

IT IS ORDERED that Plaintiff's Motion for Summary Judgment is DENIED. ECF No. 37.

IT IS FURTHER ORDERED that Defendants' Motion for Summary Judgment (ECF No. 54) is GRANTED in part and DENIED in part.

Defendant's Motion is GRANTED as to Counts I and II.

Defendant's Motion is DENIED as to Count III, which will proceed to trial.

**DATED** <u>March 20, 2017</u>.

_____
RICHARD F. BOULWARE, II
UNITED STATES DISTRICT JUDGE